IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAREN GIROUX,

             Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

             Defendant.

Case No. 1:11-cv-03158-SI

OPINION AND ORDER

Philip W. Studenberg, Attorney at Law, P.C., 230 Main Street Klamath Falls, OR 97601. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, U.S. ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Summer Stinson, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S. 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Karen Giroux seeks judicial review of the final decision of the commissioner of the

Social Security Administration ("Commissioner") denying her application for Social Security

Insurance ("SSI") benefits. Because the Commissioner's decision was supported by substantial

evidence, the decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff was born October 13, 1963, was 40 years old on the alleged disability date, and is now 51 years old. She earned her GED and attended more than a year of college, but did not earn a degree and did not receive vocational training. AR 36. She worked as a cashier and food

preparer at a restaurant from 1989 to 1991, but has not worked since. AR 129-131. Plaintiff

previously applied for Disability Income Benefits, and her claim was denied in 2006. AR 118.

She protectively filed an application for SSI on February 22, 2008, alleging disability beginning

August 30, 2004. In her application, Plaintiff alleges disability due to both mental and physical

impairments, as follows: attention deficit disorder, bipolar disorder, personality disorder,

depression, restless leg syndrome, high anxiety condition, carpal tunnel in her right hand, back

problems from sciatic nerve, and asthma. AR 122.

The Commissioner denied Plaintiff's application initially on May 29, 2008, and upon

reconsideration on December 10, 2008. Plaintiff appeared and testified at a hearing before an

Administrative Law Judge ("ALJ") on August 9, 2010, in Klamath Falls, Oregon. Plaintiff was

represented by counsel at the hearing. In a decision issued August 25, 2010, the ALJ found

Plaintiff not to be disabled. AR 13-24. Plaintiff's request for administrative review was denied

by the Appeals Council on October 25, 2011, making the ALJ's decision the final decision of the

Commissioner. AR 1-6. Plaintiff now seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.     Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

PAGE 4 – OPINION AND ORDER

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ applied the sequential analysis in his August 25, 2010 decision. AR 13-24. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date. AR 15. At step two, the ALJ determined that Plaintiff has the following severe impairments: obesity; asthma; bipolar disorder; attention deficit/hyperactivity disorder; post-traumatic stress disorder; borderline personality disorder; methamphetamine abuse in remission; and cannabis abuse. AR 15. The ALJ found that Plaintiff's severe mental impairments in combination result in "greater than minimal limitations" of her ability to perform work-related mental activities. AR 15. The ALJ also found that two of Plaintiff's physical ailments limit her capacity to work. The ALJ found that pain and reduced range of motion from obesity restrict Plaintiff's physical activities and her asthma limits her ability to work safely around certain environmental exposures. AR 15-16. Plaintiff's other claimed physical ailments

were found not to be severe. AR 16. At step three, the ALJ found that Plaintiff did not have a combination of impairments that meets or medically equals one of the listed impairments. AR 16.

The ALJ next assessed Plaintiff's RFC. AR 18-22. The ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels and can "frequently balance, stoop, kneel, crouch, crawl and climb stairs and ramps." AR 18. She has non-exertional limitations, however, and "must avoid concentrated exposure to dust, fumes, odors, [and] chemical vapors" and her mental impairments mean she can perform only "unskilled work of routine, repetitive tasks with simple instructions in a non-hazardous setting with occasional coworker contact and no public contact." AR 18. In determining the RFC, the ALJ considered Plaintiff's medical records, the credibility of Plaintiff's reported symptoms, and the relative weight to be given to the opinions of the treating and examining physical and mental health professionals. AR 18-22. The ALJ found Plaintiff's testimony regarding her impairments not to be credible to the extent her testimony was inconsistent with the RFC assessed by the ALJ. AR 19. He also did not give significant weight to the opinion of her treating physician that Plaintiff was "totally psychiatrically disabled" because it was unsupported by his treatment notes and the consultative examiner's report. AR 20.

At step four, the ALJ found that Plaintiff had no past relevant work. AR 22. At step five, the ALJ relied on the testimony of a vocational expert ("VE") and found that based on Plaintiff's age, education, lack of transferrable skills, and RFC, she could perform the requirements of representational occupations such as hand packager, garment sorter, and laboratory equipment cleaner. AR 23. The ALJ relied on the VE's testimony that these occupations have jobs available

in significant numbers in the national economy. *Id.* Thus, the ALJ found Plaintiff not disabled as defined in the Social Security Act. *Id.*

## DISCUSSION

It is difficult to discern the alleged errors by the ALJ raised and argued by Plaintiff. The Court interprets Plaintiff's Brief as raising four allegations of error: (1) the ALJ improperly discredited Plaintiff's statements about her symptoms and limitations when formulating her RFC and evaluating her ability to hold a job; (2) the ALJ erred in giving the treating psychiatrist's opinion little weight; (3) the ALJ erred in using Social Security Ruling 85-15 to support his RFC; and (4) the ALJ erred in finding Plaintiff's mental impairments in combination did not meet or equal the listing criteria 12.04 paragraph C. [1]

### A.  Plaintiff's Credibility as to the Limiting the Effect of her Symptoms

Plaintiff contends the ALJ erred in comparing "managing a household" to a sustained, full-time job. Dkt. 12 at 4. To support that contention, Plaintiff cites a statement by her psychiatrist (given little weight by the ALJ), the ALJ's statements about Plaintiff's poor work history, and Plaintiff's own statements of her symptoms and explanation why she left her previous job, which she claims the ALJ improperly ignored. *Id.* The Court construes this argument as challenging the ALJ's credibility finding.

There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572

---

[1] Plaintiff also summarily states: "We also refer to HALLEX II-4-1-3. Evaluation of Symptoms, Including Pain (Final Rules; 56 FR 57928, November 14, 1991)." Dkt. 12 at 5. This sentence does not identify or argue the claimed error; nor does it marshal any evidence from the record from which the Court may infer an argument. The Court has, nonetheless, reviewed the authority cited, an explanation of the 1991 federal rule revisions to reflect the Social Security Administration's policies for evaluation of pain and other symptoms. The Court finds no articulable and meritorious objection to the ALJ's decision based on this reference.

PAGE 7 – OPINION AND ORDER

F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted). Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.*, at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

In weighing the claimant's credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . [and] other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. For instance, the ALJ may consider inconsistencies either within the claimant's testimony or between the testimony and the claimant's conduct. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

In this case, Plaintiff testified that she "can't keep thoughts clear enough" to work, or hold her thoughts "long enough to do most things." AR 38. She testified that because of her impairments, she tries not to leave her house; is no longer a "people person," preferring to be by herself; and suffers shortness of breath, shaking, and tightness in her chest. AR 41-43.[2] These symptoms, she argues, render her incapable even of performing unskilled work on a sustained basis. *See* Social Security Ruling ("SSR") 85-15, *available at* 1985 WL 56857 (Jan. 1, 1985).

The ALJ found Plaintiff's testimony not credible for several reasons. The ALJ noted: (1) Plaintiff's ability to manage the daily activities of caring for her sons and household; (2) her work history and inconsistent statements about why she left her last job; and (3) her inconsistent reporting of her marijuana use and symptoms. The Court finds that the ALJ did not arbitrarily discredit Plaintiff's testimony and that each of these reasons is supported by substantial evidence in the record. The Court affirms the ALJ's determination that Plaintiff's testimony about her symptoms and limitation on her capability to work are not fully credible.

## 1. Plaintiff's ability to manage her household

Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639; *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). For a credibility analysis, the ALJ "need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'" *Whittenberg v. Astrue*, 2012 WL 3922151, at * 4 (D. Or.

---

[2] This testimony is consistent with her application statement: "I am a people person, but I don't like to be around people anymore, I forget things and I get in trouble at work, I have outbursts of anger, I have a lot of trouble in situations with lots of people because it triggers my anxiety, my concentration is very bad, I have a lot of problems with leaving my house due to my fear and anxiety for both myself and my house." AR 122.

PAGE 9 – OPINION AND ORDER

Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ may reject the claimant's testimony when inconsistent with the claimant's daily activities and contrary to the medical evidence.); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (claimant's testimony about daily activities, including taking care of personal needs, preparing easy meals, doing light housework and shopping for groceries, may be seen as inconsistent with the presence of a disabling condition); *Denton v. Astrue*, 2012 WL 4210508, at *6 (D. Or. Sept. 19, 2012) ("While [claimant's] activities of daily living do not necessarily rise to the level of transferable work skills, they do contradict his testimony regarding the severity of his limitations.").

In this case, the ALJ discussed Plaintiff's ability to manage her household at some length in making his determination at step three, noting that she "is able to tend to self-care, complete housework, cook, handle finances and shop for herself. She can use public transportation, care for her minor children, and make and attend appointments." AR 17. She also "prepares complete meals with several courses," and goes grocery shopping once a month. *Id.* In the credibility analysis, the ALJ recapped Plaintiff's ability to handle those activities of daily living before concluding that her testimony was not fully credible. AR 18-19. The ALJ further found that Plaintiff's "ability to manage a home including caring for minor children" was consistent with the ability to perform unskilled work. AR 20.

The ALJ's conclusion is supported by substantial evidence in the record. Plaintiff spends time every day straightening her children's things, doing laundry, and cleaning the house, AR 138; she cooks often, including complete meals with several courses, AR 138; she goes shopping at grocery and department stores, goes to the bank, and pays her bills, AR 139; and she regularly walks her children to school and takes her son to Cub Scouts, AR 140. The ALJ had

substantial evidence to find Plaintiff's ability to manage the activities of daily living was inconsistent with her testimony that she "can't hold [her] thoughts long enough to do most things." AR 38. This was a proper basis to discredit her testimony as to the limiting effect of her symptoms.

### 2.  Plaintiff's Work History

A plaintiff's work history before the alleged disability that shows little propensity to work may negatively affect the plaintiff's credibility regarding his or her inability to work. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding the ALJ did not act arbitrarily in discrediting a plaintiff in part due to a work history that was "spotty, at best" with years of unemployment even before the disability claim). Evidence that a plaintiff was no longer working for reasons other than the alleged impairment also provides reason for an ALJ to discredit that plaintiff's testimony. *See Harrelson v. Astrue*, 273 F. App'x 632, 634 (9th Cir. 2008) (finding the ALJ did not err in discrediting the plaintiff's pain testimony because she quit work for religious reasons rather than due to an impairment); *see also Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), as amended (Nov. 9, 2001) (among the "specific, cogent reasons" for disregarding the plaintiff's testimony were his statements that he was laid off, not injured); *Carroll v. Colvin*, 2014 WL 4102314, at *7 (D. Or. Aug. 18, 2014) (holding that the ALJ was "entitled to reject" the plaintiff's symptom testimony because he stopped working after he was laid off, not due to his allegedly disabling conditions). Inconsistencies within the testimony and the record also may be considered. *Turner*, 613 F.3d at 1224 n.3.

In this case, Plaintiff has not worked since June 1991, when she was 17 and worked as a cashier and food preparer. AR 122-3.[3] In her application for social security benefits, she said she

---

[3] Plaintiff testified that she also volunteered part-time for several months in 1999 at a resource center, as required by the state welfare jobs program. AR 40-41.

was terminated because she "got in a fight with the manager" and that her "condition made [her] very stressed out and overwhelmed at times at the job." AR 122. In her psychodiagnostic evaluation, however, Dr. Gregory Cole reported that Plaintiff "got along with her coworkers and supervisors. She indicates that this job ended, 'when I got tired of the job, and I quit'." AR 254. Plaintiff further told Dr. Cole that Plaintiff had held other jobs "over the years," including as a laborer and fast food restaurant work. AR 254. Those jobs are not listed in her application.

In evaluating Plaintiff's credibility in this case, the ALJ called her work history "extremely poor," adding that her inconsistent comments on why she left her job "raise doubts as to whether her continued unemployment is actually due to her alleged impairments." AR 19. This determination is supported by substantial evidence in the record.

### 3.  Plaintiff's Marijuana Use

The ALJ also discredited Plaintiff's symptom testimony based on her inconsistent statements about her marijuana use. "Inconsistent or dishonest statements about drug use can be used to infer a lack of veracity in the claimant's other assertions." *Rusten v. Comm'r of Soc. Sec. Admin.*, 468 F. App'x 717, 719 (9th Cir. 2012); *see also*, *Thomas*, 278 F.3d at 959 (inconsistent statements about marijuana use show a "lack of candor" that carries over to a plaintiff's description of physical pain").

At the hearing, Plaintiff testified that she smokes daily when she has marijuana, a friend visits and leaves a supply of marijuana for Plaintiff, and that her smoking is recreational and not used to treat any particular ailment. AR 43-44. Later in the hearing, however, in response to her attorney's question, Plaintiff testified that she was trying to get a medical marijuana card. AR 44, 45. The medical records also document shifting statements about Plaintiff's marijuana use. During an April 2007 medical appointment, Plaintiff denied any illicit drug use. AR 187, 189. Her psychiatrist's treatment notes include a statement by Plaintiff that she had been sober for

PAGE 12 – OPINION AND ORDER

more than a year in early 2007. AR 218, 220. In May and June 2007, the psychiatrist's records note that Plaintiff had been "mostly sober" with just "occasional" marijuana use. AR 216, 222. In August 2007, Plaintiff admitted "she was using more heavily than she had previously alluded to in our last visit" and was having "rebound anxiety problems" for that reason. AR 214. In 2008, Plaintiff told Dr. Cole she first used marijuana at age 19, used the drug on a daily basis, and had stopped in 1997. AR 254. Thus, the ALJ's finding that Plaintiff's inconsistent statements relating to her marijuana use "reflect negatively on the claimant's credibility" are supported by substantial evidence in the record.

In summary, the ALJ provided clear, convincing, and sufficiently specific reasons for rejecting Plaintiff's subjective testimony regarding the intensity of her symptoms and the limitations they impose on her ability to work. Further, those reasons are supported by substantial evidence in the record.

## B. Treating Psychiatrist's Opinion

Plaintiff argues that the ALJ did not "fully explain" why he gave little weight to the opinion of Dr. Michael D. Thein, Plaintiff's treating psychiatrist, who opined that Plaintiff was "totally psychiatrically disabled." AR 230. Dr. Thein also stated that Plaintiff's "ability to maintain focus, concentration, persistence and pace in a work-like setting is markedly diminished. She has severe social anxiety problems that lead to severe panic attacks and avoidance behaviors. She has had a multitude of major depression episodes that render her unable to report to work or function if she does show up there." *Id.*.

The ALJ must generally give more weight to opinions from treating physicians. 20 C.F.R. § 404.1527(c). The ALJ, however, need not give great weight to a treating physician's opinion as to the ultimate question of disability and capacity to work. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1527(d). Further, a treating physician's

opinion may be given less weight if it is not supported by medical evidence or inconsistent with the medical record as a whole. 20 C.F.R. § 404.1527(c); *DeBerry v. Comm'r of Soc. Sec. Admin.*, 352 F.. App'x 173, 176 (9th Cir. 2009) (holding that "[c]ontradictions between a doctor's opinions and medical findings are a legitimate reason to question credibility."). The ALJ may properly reject a treating physician's opinion for lack of objective support, particularly where that opinion is premised on the patient's subjective complaints that have been discredited. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Finally, the ALJ "need not accept an opinion of a physician—even a treating physician—if it is conclusionary and brief and is unsupported by clinical findings." *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1021 (9th Cir.1992). Where a treating physician's opinion is contradicted by another medical source opinion, an ALJ "must provide specific and legitimate reasons for rejecting the opinion of a treating physician." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

In this case, the ALJ explained that he did not give Dr. Thein's opinion significant weight because: (1) it was inconsistent with the medical record where Plaintiff was "repeatedly noted to be stable with medications"; (2) it was not supported by Dr. Thein's treatment notes; and (3) it was inconsistent with the findings of Dr. Cole, the consultative examiner. AR 20. The Court finds all three of these to be specific and legitimate reasons supported by substantial evidence in the record. In evaluating the record, the ALJ "must give attention to the effects of medication on [a claimant's] symptoms, signs, and ability to function." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Dr. Thein's notes repeatedly report that Plaintiff was complying with her medication plans and that her symptoms were usually well-controlled. *See* AR 179, 181, 208, 223, 227.

Dr. Thein's treatment notes also consistently report that Plaintiff "maintain[ed] fairly good eye contact," was cooperative, and that her thought processing was "grossly tight, logical

and goal directed." AR 208, 210, 212, 215. Stressors in her life did affect her mood. For example, she was crying and depressed in October 2007, a few weeks after her ex-partner died of unknown causes at age 38. AR 210. Troubles with her son were causing stress in September 2007 (he was sent to juvenile detention), but even then, Dr. Thein reported that "[o]verall [Plaintiff's] mood is stable." AR 212. Dr. Thein also often noted that Plaintiff's mood seemed "euthymic"—a psychiatric term indicating that a bipolar patient is close to normal functioning[4]—including in his most recent report in the record, from December 2007. AR 212, 208, 220. Dr. Thein reported in December 2007 that Plaintiff's mood was "stable for the most part," and that she continues to be "chronically moderately depressed." AR 208.

Finally, the findings of the examining psychiatrist, Dr. Gregory A. Cole, also contradict Dr. Thein's opinion of total disability. Dr. Cole found Plaintiff had "some problems in the areas of attention and concentration," that her memory was average or better, and that she "tends to give up easily on tasks" and her overall pace was slow. AR 258. Plaintiff was able to "sustain simple routine tasks, and no problems completing a simple multiple-step task were observed." *Id.*

It's is the ALJ's to resolve ambiguities in the medical evidence, *Tommasetti*, 533 F.3d at 1041-42, and the ALJ must determine credibility and resolve conflicts in medical testimony. *Andrews*, 53 F.3d at 1039-40. Here, Dr. Thein's letter claiming Plaintiff is completely unable to work is cast into doubt by Dr. Thein's own treatment notes, Plaintiff's relative stability under medical treatment, and Dr. Cole's examination and findings. The Court finds that substantial evidence in the record supports the weight given by the ALJ to Dr. Thein's opinion letter.

---

[4] Euthymia is "a phase or state in patients with bipolar disorder that is neither manic nor depressive but in between, close to normal functioning." *APA Dictionary of Psychology*, p. 347 (American Psychological Association, Gary R. VandenBos, ed. 2007).

**C.  Application of Social Security Ruling 85-15**

Plaintiff argues that the ALJ erred in his application of SSR 85-15, which governs the evaluation of whether a claimant with nonexertional impairments, including mental illness, is capable of work. SSR 85-15, *available at* 1985 WL 56857. The ruling notes that the potential job base for mentally ill claimants is "not necessarily large," unless they can meet the "intellectual and emotional demands of at least unskilled, competitive, remunerative work on a sustained basis." *Id.* at *1. The basic mental demands of such work include the sustained ability to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.* at *4. A "substantial loss" of ability to meet those demands would "severely limit" the potential job base. *Id.* Thus, "a finding of disability can be appropriate for an individual who has a severe mental impairment which does not meet or equal the Listing of Impairments, even where he or she does not have adversities in age, education or work experience." *Id.* at *1.

Plaintiff's brief recites the standards set in SSR 85-15, then correctly notes that the ALJ found that the results of the consultative examination and Plaintiff's ability to manage her home were consistent with the ability to perform unskilled work. Plaintiff later argues, however, that the ALJ erred, because: (1) Plaintiff described her own difficulty working in several statements; (2) Dr. Thein stated Plaintiff made multiple attempts over the years to start working; and (3) the consultative examiner opined that Plaintiff had problems in attention, concentration, and level of anxiety. *Id.* at pp. 4-5.

The Court has already found that the ALJ properly discredited Plaintiff's testimony about her limitations and Dr. Thein's opinion letter. Dr. Thein's statement about Plaintiff's attempts to reintegrate into the workforce is unsupported by evidence in the record of attempts to find work and is contradicted by Plaintiff's testimony at the hearing, when she discussed only work in the

PAGE 16 – OPINION AND ORDER

early 1990s and volunteer work through the state welfare system's jobs program. AR 39-40.

Thus, Plaintiff's argument that the ALJ erred in failing to consider Plaintiff's and Dr. Thein's

statements regarding Plaintiff's attempts to work is rejected.

Finally, the Court finds that the ALJ appropriately considered and incorporated the

opinion of consultative examiner Dr. Cole, who completed a psychodiagnostic evaluation at the

request of Disability Determination Services. AR 21. As noted above Dr. Cole found that

Plaintiff had problems in attention, concentration, and anxiety. Those are reflected in Plaintiff's

RFC. Specifically, the RFC limits Plaintiff to "routine, repetitive tasks with simple instructions"

to accommodate her difficulties in attention and concentration and restricts Plaintiff to jobs with

no contact with the general public and only occasional contract with coworkers. AR 18-20, 49.

The Court finds that the ALJ properly applied SSR 85-15 in finding that Plaintiff could meet the

basic mental demands of unskilled work.

**D.  Listing Criteria C of 12.04.**

Plaintiff contends that she meets the criteria for paragraph C of listing 12.04 because

"even a marginal increase in mental demands or changes in the environment *could* cause

[Plaintiff] to decompensate." Dkt. 12 p.5 (emphasis added). This argument is without merit.

As the ALJ notes in his decision, the paragraph C listing criteria require a "medically

documented history of a chronic affective disorder of at least 2 years' duration that has caused

more than a minimal limitation of ability to do basic work activities, with symptoms or signs

currently attenuated by medication or psychosocial support," as well as at least one of three

additional factors. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff contends she meets the second

factor: "A residual disease process that has resulted in such marginal adjustment that even a

minimal increase in mental demands or change in the environment would be predicted to cause

the individual to decompensate." *Id.*

The ALJ found that Plaintiff has "experienced no episodes of decompensation" and that she does not satisfy any of the factors for paragraph C listing. AR 17. Plaintiff's argument that she "could" decompensate with even a minimal increase in mental demands merely speculates that Plaintiff might meet the language of the listing criteria. Plaintiff cites to no evidence or medical opinion that she would, or even would likely, decompensate under a minimal increase in mental demands.

A claimant has the burden of proof at step 3 to establish that her impairment or combination of impairments meets or equals the criteria for the listed impairment, *Tackett*, 180 F.3d at 1100, and must set forth evidence to support that equivalency determination. *Burch*, 400 F.3d at 683. Not only has Plaintiff not met this burden, the evidence in the medical record suggests the opposite. The record shows that Plaintiff has handled significant stress in her life—the death of a former partner, domestic abuse, a delinquent son—with no episodes of decompensation. The Court finds that the ALJ did not err in determining that Plaintiff's impairments did not meet the listing criteria of paragraph C.

## CONCLUSION

Because the Commissioner's decision that Ms. Giroux is not disabled is supported by substantial evidence in the record, that decision is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 1st day of December, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge